IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLLEEN YARNALL, et al., | : | |
| Plaintiffs | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-3130 |
| PHILADELPHIA SCHOOL | : | |
| DISTRICT, et al. | : | |
| | : | |

## MEMORANDUM AND ORDER

L. Felipe Restrepo, U.S. Magistrate Judge                                                                 April 4, 2013

This is a consolidated employment discrimination case.[1] This court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs Colleen Yarnall, Nicole Boyd, Marta Ciccimaro, and Debra McKibben Marenbach are all teachers employed by the School District of Philadelphia ("School District" or "SDP"). At all times relevant to their individual civil suits, each was assigned to work at the School District's Thomas Mifflin School ("Mifflin"). Plaintiffs allege that Defendants[2] unlawfully discriminated against Plaintiffs in violation of the laws of the United States and of the Commonwealth of Pennsylvania that prohibit discrimination on the bases of race and sex and prohibit retaliation against employees because of complaints of race and sex

---

[1] The four lawsuits were originally filed on May 10, 2011 (Doc. #1). Most of the facts and legal claims overlap in all four civil actions. As such, our analysis is consolidated for purposes of this Motion.

[2] Defendants include the School District; SDP's former superintendent, Dr. Arlene Ackerman (deceased); former Regional Assistant Superintendents Shirl E. Gilbert and Diane Campbell Hathaway; a coworker of the four teachers, Shirl A. Ishmael; former Thomas Mifflin School principal Charles Ray III; and the four teachers' collective bargaining representative, The Philadelphia Federation Teachers Union ("PFT" or "Union").

1

discrimination.  Presently before the Court are Defendants Motions to Dismiss all claims.[3]  (Doc. # 35, 36, 38, 65).

## I.  Standard of Review

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.  See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., 237 F.3d 270, 272 (3d Cir. 2001).  A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Simply reciting the elements will not suffice.  Id.; see also Phillips, 515 F.3d at 231.

---

[3] Defendants PFT and Charles Ray III have also moved, in the alternative, for summary judgment.  Because no discovery has been conducted, the Court denies Defendants' Motion for Summary Judgment at this stage.

2

## II. Discussion

### A. Title VII Claims

Defendants first seek to dismiss Plaintiffs' Title VII claims.  With respect to Plaintiffs' Title VII gender discrimination and retaliation claims, Defendants argue that these claims are barred by Plaintiffs' failure to exhaust their administrative remedies before resorting to private suit.

Under the established statutory framework, a plaintiff must exhaust all available remedies by filing a timely discrimination charge with the EEOC before bringing a discrimination suit to court.  See 42 U.S.C. §2000e-5.  Further, a plaintiff's Title VII suit is limited to claims and persons listed in the EEOC charge as only those claims are considered "exhausted" under the statute.  Barzanty v. Verizon PA, Inc., 361 Fed. App. 411, 414 (3d Cir. 2010).  Here, Plaintiffs only included a race discrimination claim in their formal charge with the EEOC.  Because they did not include their gender discrimination and retaliation claims in the charge, Plaintiffs instead attempt to use their answers to the EEOC Intake Questionnaire in which they alleged gender discrimination and retaliation to support their argument that they exhausted their administrative remedies.  See Pls.' Answer to Defs.' Mot. to Dismiss at 10 (Doc. #52).  This argument, however, is without merit.  While an EEOC Questionnaire is sufficient for statute of limitations purposes, the Third Circuit does not recognize an EEOC Questionnaire as a charge for purposes of exhausting remedies.  See Barzanty, 361 Fed. App. at 415 (holding that a claim mentioned in the EEOC Charge Questionnaire but not included in the formal charge is not exhausted); see also, Kellam v. Independence Charter School, 735 F.Supp.2d 248, 253 (E.D.Pa. Aug 18, 2010) ("If a claim is initially mentioned in the Charge Questionnaire but is not included in the formal charge, then this claim is not exhausted.  Indeed, to allow a plaintiff to initially raise a claim with

3

a Charge Questionnaire and then abandon it in his formal charge only to reassert that claim in federal court would completely subvert the exhaustion requirement.").

By failing to include their gender discrimination and retaliation claims in their formal charge, Plaintiffs have failed to exhaust these claims. Inclusion of these claims in their EEOC Questionnaire does not cure this deficiency. Consequently, Defendants' Motion to Dismiss Plaintiffs' Title VII gender discrimination and Title VII retaliation claims is granted.

With respect to Plaintiffs' Title VII race discrimination claims, Plaintiffs have provided sufficient facts to suggest that discovery may reveal the necessary elements to prove a prima facie case of racial discrimination. Specifically, Plaintiffs allege that Defendant Ray accused each of them of being "unfit to teach the African American students at Mifflin Elementary School because [they] are white." Boyd 2nd Am. Compl. ¶ 18; Marenbach 2nd Am. Compl. ¶ 19; Yarnall 2nd Am. Coml. ¶ 16. Plaintiffs further allege that Defendant Ray required all white teachers to read an article about white teachers' inability to effectively teach black students. See Boyd 2nd Am. Compl. ¶ 33; Ciccimaro 2nd Am. Compl. ¶ 31; Marenbach 2nd Am. Compl. ¶ 32; Yarnall 2nd Am. Coml. ¶ 31. Plaintiffs also assert several examples of how their work conditions and privileges created challenges for them to perform their jobs, and allege that black teachers were not subjected to these conditions. See Boyd 2nd Am. Compl. ¶ 17; CicciMaro 2nd Am. Compl. ¶15; Marenbach 2nd Am. Compl. ¶ 16; Yarnall 2nd Am. Coml. ¶ 15. These facts, if accepted as true, are sufficient to survive Defendants' Motion to Dismiss Plaintiffs' Title VII race discrimination claims.

**B.  PHRA Claim**

Next, Defendants argue that Plaintiffs' Pennsylvania Human Relations Act ("PHRA") claims are barred by the statute of limitations.

Under the PHRA, a plaintiff must file a complaint with the Philadelphia Human Relations Commission ("PHRC") within 180 days of the alleged discriminatory act. See Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d. Cir. 1997) (citing 43 PA.S. §§959(a), 962). Defendants' argument is based on the fact that Plaintiffs did not file a complaint with the PHRC until April 21, 2011, almost two years after the alleged discriminatory acts. Therefore, according to Defendants, Plaintiffs' PHRA claims must be dismissed.

Plaintiffs contend that their EEOC Questionnaire satisfied the PHRA's statute of limitations because the EEOC and the PHRC have a work-sharing agreement. See Pls.' Answer to Defs.' Mot. to Dismiss at 9 (Doc. #52). This argument, however, is without merit. "[A]lthough the EEOC and the PHRC have a work-sharing agreement for the initial investigation of discrimination charges, this does not mean that filing a charge with one is automatically sufficient to file a charge with another." Kellam, 735 F. Supp. 2d at 255. Moreover, as discussed above, an EEOC Questionnaire is different from an EEOC charge. Filing an EEOC Questionnaire within the required statutory timeframe does not satisfy the PHRA's statute of limitations, because the PHRC generally does not receive notice of a plaintiff's discrimination claim when a plaintiff files an EEOC Questionnaire. Id. Accordingly, Plaintiffs' filing of the EEOC Questionnaire is insufficient for purposes of satisfying the PHRA's statute of limitations.

Plaintiffs' claim is preserved, however, as we find that the doctrine of equitable tolling should apply for the period between the time that the Charge Questionnaire was filed with the EEOC and the time that the formal charge of discrimination was dual filed with the EEOC and

5

the PHRC.  See Id.  (holding that Plaintiff's PHRA claims were equitably tolled from the date Plaintiff filed Charge Questionnaire with the EEOC until time formal charge was filed).  Under certain circumstances, Pennsylvania's Administrative Code allows for the equitable tolling of the statute of limitations.  Id.  The Court generally recognizes three circumstances in which the statute of limitations may be equitably tolled:

> First, if the plaintiff actively pursued his claim but filed a defective pleading within the statutory period; second, if the statutory deadline passed due to the plaintiff's reliance on the defendant's misconduct or misrepresentation; and third, if the plaintiff has been prevented from asserting his rights in some 'extraordinary way.'

Id.  We agree with Plaintiffs that the length of time it took for the EEOC to reply to Plaintiffs' EEOC charge prevented Plaintiffs from asserting their rights in an "extraordinary way."  Plaintiffs did not hear from the EEOC for nearly 18 months after filing their EEOC Questionnaire, despite attempts to contact the EEOC.  See Pls.' Answer to Defs.' Mot. to Dismiss at 3 (Doc. # 52).  Moreover, Plaintiffs would have had to prepare their own complaints to satisfy the statute of limitations as they were unrepresented at the time.  Id. at 5.  As the Court in Kellam pointed out, this "would entirely defeat the purpose of the work-sharing agreement between the EEOC and the PHRC." 735 F. Supp. 2d at 256.  Under these circumstances, we find it equitable to toll the statute of limitations from the date that Plaintiffs filed their Charge Questionnaire with the EEOC until the date that the EEOC completed the formal charge for Plaintiffs' signatures.  Consequently, Defendants' Motion to Dismiss Plaintiffs' PHRA claims due to the statute of limitations is denied.

### C.  ADEA Claim

Defendants next move to dismiss Plaintiffs' ADEA claims.  For the reasons below, the Court will grant Defendants' Motion to Dismiss these claims.

In the Third Circuit, to sufficiently allege disparate treatment on the basis of age, a plaintiff must allege that (1) her age played a role in the employer's decision, and (2) her age had a "determinative influence" on the result of that decision.  Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir.2004).  Additionally, the plaintiff must show that "ultimately [she was] replaced by a person sufficiently younger to permit an inference of age discrimination."  Id.

In this case, Plaintiffs Ciccimaro and Marenbach failed to present any factual basis for their ADEA claims.  Instead, Plaintiffs only made conclusory statements and legal conclusions in their complaints.  See Ciccimaro 2nd Am. Compl. ¶ 63 ("Defendant Charles Ray subjected Marta Ciccimaro to various forms of harassment and disparate treatment on the basis of her age in violation of federal and state laws."); Marenbach 2nd Am. Compl. ¶ 71.  Plaintiffs did not provide any facts to suggest that Defendants discriminated against them because of their age nor did they include any facts to state a claim to relief that is plausible on its face.  See Twombly, 550 U.S. at 570.  Thus, Defendants' Motion to Dismiss Plaintiffs' claims for age discrimination is granted.

**D.  Tort Claims**

*i. Defamation, Libel and Slander, Invasion of Privacy*

Defendants next argue that Plaintiffs' defamation, libel and slander, and invasion of privacy claims are barred by Pennsylvania's one-year statute of limitations.  Defendants' argument is based on the fact that Plaintiffs' complaints reference the alleged improper conduct[4]

---

[4] Plaintiffs allege that Defendants published orally and/or in writing various false and disparaging comments to students, students' parents, colleagues, supervisors, and school administrators. Ciccimaro Compl. ¶ 137, 138; Marenbach Compl. ¶ 114, 115; Boys Compl. ¶ 112, 113; Yarnall Compl. ¶ 112, 113. Plaintiffs also allege that their privacy was invaded when Defendant Ray Charles III spied on Plaintiffs by hiring a private investigator. Ciccimaro Compl. ¶ 116; Marenbach Compl. ¶ 101; Boys Compl. ¶ 91; Yarnall Compl. ¶ 91.

as having occurred throughout the 2008-2009 school year, and Plaintiffs did not commence this action until May 2011.  Therefore, according to Defendants, Plaintiffs' claims are time-barred because the action was commenced more than a year after the alleged incident.

Plaintiffs assert that they did not learn of the alleged improper conduct and that they could not, through the exercise of reasonable diligence, have become aware of the improper conduct prior to that time.  Based on these facts, Plaintiffs argue that the "discovery rule" should be applied to toll the statute of limitations and the claim should be deemed timely filed, because Plaintiffs commenced this action within a year of discovering their injuries.

The Court must decide whether the discovery rule is applicable to Plaintiffs' claims because it is a limited exception to the bar of the statute of limitations.  The discovery rule provides that:

> Where the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.

Gatling v. Eaton Corp., 807 A.2d 283, 289 (Pa.Super.2002).  A court's application of the discovery rule arises out of an "inability of a [plaintiff], despite the exercise of due diligence, to know the injury or its cause."  Pocono International Raceway v. Pocono Produce, 503 Pa. 80, 468 A.2d 468, 471 (1983).

With respect to these claims, it is clear that Plaintiffs were aware of, or, with the exercise of due diligence could have been aware of, the alleged injuries at the time they occurred.  According to Plaintiffs' complaints, the slanderous communications were made to everyone involved in the school district, including their students and colleagues.  Moreover, the written statements were available in the public domain making Plaintiffs' discovery of their injuries

8

possible with the exercise of due diligence.  Finally, Plaintiffs note that they became aware on May 15, 2009 that defendant Ray hired a man and gave him access to Plaintiffs' private personnel files to follow and intimidate Plaintiffs.  Accordingly, the discovery rule does not apply.  See Barrett v. Catacombs, 64 F.Supp.2d 440 (E.D.Pa.1999); Bradford v. American Media Operations, Inc., 882 F.Supp. 1508 (E.D.Pa.1995).  Defendants' motion to dismiss Plaintiffs' state tort law claims for defamation, libel and slander, and invasion of privacy is granted as these claims are all time-barred as a matter of law.

*ii. Intentional and Negligent Infliction of Emotional Distress and Tortious Interference with Contractual Relations*

The exclusivity provisions of the Pennsylvania Workers' Compensation Act, 77 Pa. Cons.Stat. Ann. § 1, et seq ("PWCA"), preempt Plaintiffs' intentional and negligent infliction of emotional distress and tortious interference with contractual relations claims.  The PWCA provides the exclusive remedy for all employees' work-related injuries.  See Joyner v. Sch. Dist., 313 F.Supp. 2d 495, 504 (E.D. Pa. 2004).  However, the PWCA does recognize a limited exception, known as the "personal animus" or "third party attack" exception for "employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment."  See 77 Pa. Cons.Stat. Ann. § 411(1).  The "critical inquiry in determining the applicability of the third-party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship."  Fugarino v. Univ. Servs., 123 F.Supp.2d 838, 844 (E.D.Pa.2000).

9

Here, Plaintiffs fail to allege that Defendants' actions were personal in nature or that any of the defendants and Plaintiffs had a relationship outside of the workplace. Moreover, all of the conduct at issue occurred in the work context and was directly related to workplace issues. Accordingly, the "personal animus" exception does not apply, and the PWCA preempts Plaintiffs' intentional and negligent infliction of emotional distress and tortious interference with contractual relations claims.

### iii. Negligent Hiring and Supervision

Under the Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 et seq. ("PSTCA"), school districts are immune from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons.Stat. Ann. § 8541. This immunity is waived under § 8542 to the extent the agency would otherwise be liable for a narrow subset of negligent acts by its agents or employees. Id. "Negligent hiring, training and retention of an unfit supervisor is not one of the negligent acts for which immunity is waived." Joyner, 313 F.Supp.2d at 504. Accordingly, the Court grants Defendants' Motion to Dismiss this claim.

### iv. Civil Conspiracy

Under Pennsylvania law, "to overcome a motion to dismiss, a party asserting civil conspiracy must allege: '(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Combs. V. NCO Financial Systems, Inc., 2011 U.S. Dist. LEXIS 37000 at *10 (E.D. Pa. 2011). Plaintiffs allege some form of conspiracy between and amongst the Defendants, but

fail to state specific facts indicating that Defendants actively participated in a conspiracy, including, for example, what overt act was done in pursuance of a common purpose to unlawfully harm Plaintiffs. Therefore, the Court grants Defendants' Motion to Dismiss Plaintiffs' civil conspiracy claims.

    *v. Loss of Consortium*

Finally, because this Court has decided to dismiss Plaintiffs' state law tort claims, the court must also dismiss the derivative loss of consortium claims. See <u>Quitmeyer v. Southeastern Pennsylvania Trasp. Auth.</u>, 740 F.Supp. 363, 370 (E.D.Pa.1990)(spouse's civil rights claims did not support claim for loss of consortium); <u>Darr Constr. Co. v. Workmen's Compensation App. Bd.</u>, 715 A.2d 1075, 1080 (Pa.1998)(under Pennsylvania law loss of consortium claim is derivative of spouse's common law tort claims).

    **F. Section 1983 and Federal & State Constitutional Claims**

Plaintiffs also allege race, color, and sex discrimination and retaliation claims under 42 U.S.C. §1983. Plaintiffs ground their claims in the Fourteenth Amendment of the U.S. Constitution and Article 1, §§ 1 and 26 of the Pennsylvania Constitution, arguing that their rights to equal protection, due process, and privacy were violated by Defendants. In response, Defendants have moved for dismissal with prejudice of all claims under rule 12(b).

    *i <u>Monell</u> and §1983 Claims against the Philadelphia School District*

In order to prevail on a § 1983 claim, a plaintiff must clear two hurdles. First, she must demonstrate that she was deprived of a right secured to her by the Constitution or federal law. <u>Gruenke v. Seip</u>, 225 F.3d 290, 298 (3d Cir.2000). Second, she must show that the alleged

11

deprivation was committed by a person acting through conduct sanctioned under color of state law. Id. Plaintiff must prove by a preponderance of the evidence that the conduct committed by one acting under color of state law deprived the plaintiff of "rights, privileges, or immunities guaranteed by the Constitution." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). For the pleading stage, however, in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166–67 (1993), the Supreme Court held that notice pleading was sufficient for § 1983 suits against municipalities.

A municipality may be held liable under a § 1983 claim only when the municipality causes a constitutional tort via a policy, practice or custom. Monell, 436 U.S. at 691–695. In order to establish that a municipal custom exists, evidence must show that a practice, unauthorized by law, is so permanent and well-settled as to virtually constitute law. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996). Establishing custom can happen through "proving knowledge of, and acquiescence to, a practice." Watson v. Abington Township, 478 F.3d 144, 156 (3d Cir.2007). To establish a municipal policy, a plaintiff can show that the policy exists if an individual possessing final decision-making authority regarding the action makes an official statement or policy. Id. at 155. Municipal liability under § 1983 cannot be premised on a claim of respondeat superior, meaning that municipalities cannot be sued for their employees' acts. Id. The municipality may only be held liable under § 1983 when the government's policy or custom causes the injury alleged in the complaint. City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Defendants assert that Plaintiffs have not alleged a proper Monell or § 1983 claim that Defendant PSD, through a policy, practice or custom, violated their constitutional rights. We agree. Plaintiffs have not pled any actionable claim against the PSD. Plaintiffs' complaints all

fail to allege any basis for determining that the discriminatory and retaliatory actions allegedly carried out by Defendants were the result of any official policy or custom of the PSD. To the contrary, Plaintiffs' complaints are void of any reference whatsoever to any specific PSD policy or customs. While Plaintiffs make vague claims of vicarious liability, see Yarnall 2nd Am. Compl ¶¶ 64, 79; Boyd 2nd Am. Compl ¶64; Marenback 2nd Am. Compl ¶72, 89; Ciccimaro 2nd Am. Compl ¶¶87, 104, the doctrine of respondeat superior is not applicable in §1983 claims. Monell, 436 U.S. at 691. As such, Plaintiffs' claims implicating the PSD amount to nothing more than insufficient "labels and conclusions," Twombly, 550 U.S. 545, and as such we dismiss these claims with respect to Defendant PSD.

*ii. Section 1983 Claims against Defendant PFT*

As discussed with regards Plaintiffs' §1983 claims against Defendant PSD, liability against Defendant PFT only attaches upon proof that the injury of which Plaintiffs complain was caused by an official policy or practice. McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009). Because Plaintiffs have alleged no such facts, their §1983 claims against Defendant PFT must be dismissed.

*iii. Section 1983 Claims against Individual Defendants*

Individual liability in a §1983 action is personal in nature, and a defendant is only liable if he was personally, affirmatively involved in the alleged malfeasance. See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (citation omitted).

The court concludes that Plaintiffs have failed to sufficiently plead an individual capacity claim against Defendants' Ackerman and Hathaway. Plaintiffs provide no allegations that establish any wrongful conduct on behalf of these officials. Because <u>respondeat superior</u> does not apply in §1983 claims, these Defendants cannot be held liable for the actions of their subordinates absent proof of their own wrongful conduct. As such, Plaintiffs' §1983 claims against Defendants Ackerman and Hathaway must be dismissed.

With respect to Defendants Ray, Gilbert, and Ishmael, Plaintiffs have sufficiently pled that these defendants either personally directed, participated in, or acknowledged and acquiesced in the discriminatory conduct of which they complain.

(a) Equal Protection

Plaintiffs ground their discrimination claims in the Fourteenth Amendment of the Constitution, and allege that their rights to equal protection and privacy were violated. With respect to Plaintiffs' equal protection claims, "[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection [under the Fourteenth Amendment], plaintiffs must prove the existence of purposeful discrimination." <u>Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.</u>, 587 F. 3d 176, 196 (3d Cir. 2009) (quoting <u>Andrews v. Phila.</u>, 895 F.2d 1469, 1478 (3d Cir. 1990)). Plaintiffs must demonstrate "that [they] received different treatment from that received by other individuals." <u>Id.</u> As set forth above, Plaintiffs have sufficiently alleged facts to support their claim that Defendants Ray, Gilbert, and Ishmael discriminated against Plaintiffs based on their race and gender and that similarly situated individuals were treated differently. Plaintiffs allege that Defendants' Ray and Ishmael referred to each plaintiff as a "bitch" and that Defendant Ray made sexually explicit comments and

14

accused each of them of being "unfit to teach the African American students at Mifflin Elementary School because [they] are white." Boyd 2nd Am. Compl. ¶ 18; Marenbach 2nd Am. Compl. ¶ 19; Yarnall 2nd Am. Coml. ¶ 16. Plaintiffs further allege that Defendant Ray required all white teachers to read an article about white teachers' inability to effectively teach black students, see Boyd 2nd Am. Compl. ¶ 33; Ciccimaro 2nd Am. Compl. ¶ 31; Marenbach 2nd Am. Compl. ¶ 32; Yarnall 2nd Am. Coml. ¶ 31, and that Defendant Gilbert told a white teacher that "because of her appearance it would be hard for her to teach a black student." Plaintiffs also assert several examples of how their work conditions and privileges created challenges for them to perform their jobs, and allege that black teachers were not subjected to these conditions. See Boyd 2nd Am. Compl. ¶ 17; CicciMaro 2nd Am. Compl. ¶15; Marenbach 2nd Am. Compl. ¶ 16; Yarnall 2nd Am. Coml. ¶ 15.

(b) Invasion of Privacy

With respect to Plaintiffs' invasion of privacy claims, Plaintiffs' allege that Defendant Ray accessed their private personnel files in order to find grounds for firing and harassing them, and that Defendant Ray shared the files and his intentions with Defendant Ishmael.

"[T]he right not to have intimate facts concerning one's life disclosed without one's consent" is "a venerable [right] whose constitutional significance we have recognized in the past." Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir.1999). "In determining whether information is entitled to privacy protection, [this Court] ha[s] looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112 (3d Cir.1987). The Third

Circuit has deemed to be protected a private employee's medical information when sought by the government, Westinghouse Elec., 638 F.2d 570, medical, financial and behavioral information relevant to a police investigator's ability to work in dangerous and stressful situations, Fraternal Order of Police, 812 F.2d 105, a public employee's medical prescription record, Doe v. Southeastern Pennsylvania Trans. Auth. ( SEPTA ), 72 F.3d 1133 (3d Cir.1995), a minor student's pregnancy status, Gruenke v. Seip, 225 F.3d 290 (3d Cir.2000), sexual orientation, Sterling, 232 F.3d 190, and an inmate's HIV-positive status, Doe v. Delie, 257 F.3d 309 (3d Cir.2001).

The right to avoid disclosure of personal matters is not absolute, however. "Public health or like public concerns may justify access to information an individual may desire to remain confidential." Sterling, 232 F.3d at 195 (citing Westinghouse Elec., 638 F.2d at 577); see also Fraternal Order of Police, 812 F.2d at 110 ("Disclosure may be required if the government interest in disclosure outweighs the individual's privacy interest"). As the Third Circuit explained in Westinghouse Electric, in order to decide whether an intrusion into an individual's privacy is justified, "we must engage in the delicate task of weighing competing interests." 638 F.2d at 578. The Court has also indicted that the following factors should be considered:

> the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access."

Id. Here, the information contained in the Plaintiffs' personnel files is intimate and private and within Plaintiffs' reasonable expectations of confidentiality. Plaintiffs' likewise had a reasonable expectation that Defendant would not needlessly share such information with co-

workers or for the purpose of harassment. As such, Plaintiffs' allegations against Defendant Ray state a claim for violations of their Fourteenth Amendment right to privacy.

(c) Retaliation

Finally, Plaintiffs have pled §1983 retaliation claims in addition to the above discriminatory charges. To plead a § 1983 retaliation claim, plaintiffs must show: "(1) that they engaged in a protected activity, (2) that defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. Ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d. Cir. 2007). The causal connection required to prove retaliation can be established by showing "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." A defendant can defeat the claim if they can show that the actions would have been taken had plaintiff "not engaged in the protected activity." Id.

With respect to Defendant Ray, Plaintiffs have sufficiently pled a retaliation claim where they allege that in response to their filing complaints of discrimination with their union, Defendant Ray hired an individual to harass the women and went so far as to provide this individual with aforementioned personnel files in order to aid in his harassment and to enable him to follow them to their homes. See Boyd 2nd Am. Compl. ¶ 17; CicciMaro 2nd Am. Compl. ¶15; Marenbach 2nd Am. Compl. ¶ 16; Yarnall 2nd Am. Coml. ¶ 15. Plaintiffs have failed, however, to allege any facts sufficient to support this retaliation claim with respect to Defendants Gilbert and Ismael.

17

## III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss Plaintiffs' claims will be granted in part, and denied in part.

An implementing Order follows.