IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLLEEN YARNALL et al., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA SCHOOL | : | NO. 11-3130 |
| DISTRICT et al. | : | |
| | : | |

## MEMORANDUM

**L. Felipe Restrepo, J.**                                        **March 31, 2015**

Defendant Philadelphia School District ("School District") filed a Motion *in Limine* (ECF No. 179) to preclude Plaintiffs from introducing any testimony or evidence relating to non-party Rodney Bradley's alleged "spying" activities.  In the alternative to precluding such evidence, the School District requests that Count I and Count II be tried separately from Count III.  Following the Court's disposition of the parties' summary judgment motions, the School District filed a supplemental brief (ECF No. 205), urging the Court to enter summary pursuant to Rule 56(f) of the Federal Rule of Civil Procedure on Count III in favor of Defendant Charles Ray.  For the reasons that follow, the Court will: (1) not grant summary judgment pursuant to Rule 56(f) on Count III; (2) deny the School District's Motion *in Limine* to preclude evidence relating to Rodney Bradley; and (3) deny the School District's request for separate trials.

## I.    BACKGROUND

Plaintiffs are four white/Caucasian teachers employed by the School District who filed this action as a result of their experiences while working at the Thomas Mifflin Elementary School during the 2008-09 school year.  The parties are scheduled to begin trial in this action on

June 1, 2015.[1]  Following the disposition of the parties' summary judgment motions, there are three pending counts against two defendants.  In Count I, Plaintiffs assert a Title VII claim against the School District for hostile work environment based on race.  In Count II, Plaintiffs assert a Section 1983 claim against Ray for violating their right to equal protection under the law.  In Count III, Plaintiffs assert a Section 1983 claim against Ray for retaliation and invasion of privacy.

      A.    <u>Factual History</u>[2]

In or around August 2008, Ray and Bradley first became acquainted through Bradley's association with Lincoln University.  JA 1330.[3]  Though they met because of similar professional interests, Ray and Bradley began to develop a personal relationship that morphed into friendship in the months that followed.  JA 1338, 1362.  The two visited each other's homes, would get together for social activities, and would see or speak with each other several times a week.  JA 1338-39, 1361-62.  At some point during the 2008-09 school year, Ray approached Bradley about covertly surveilling Plaintiffs.  JA 1332-33.  Ray wanted to scare Plaintiffs.  JA 1336.  He also wanted harm to come to Plaintiffs.  JA 1333, 1339.  Plaintiffs were making Ray's life "quite complicated, real miserable" – he wanted them "gone from the building."  JA 1333, 1336.  Ray was particularly interested to know whether the Plaintiffs were meeting off school grounds.  JA 1362.

---

[1]     The trial in this action was originally scheduled for October 3, 2014, but was continued at the request of Ray's former counsel.  <u>See</u> ECF Nos. 187, 198.  The trial was recently continued for a second time as a result of a direct request from Ray in his <i>pro se</i> capacity.  <u>See</u> ECF Nos. 220, 223.

[2]     The facts summarized here are only those relevant to the instant motion.  For purposes of this motion, the Court views all disputed facts in the light most favorable to the Plaintiffs, the non-moving party.  Accordingly, the Court will fully credit Bradley's testimony, as it represents Plaintiffs' best outcome at trial with respect to Ray's actions.  Ray vehemently and nearly universally denies all aspects of Bradley's recollection.  <u>See, e.g.</u>, JA 1220 (Ray denying he gave Bradley access to teacher files, addresses, emails, or instructed Bradley to follow Plaintiffs).

[3]     Citations to "JA" page numbers represent citations to portions of the Joint Appendix submitted in support of the parties' summary judgment motions.  <u>See</u> ECF No. 141.

Bradley ultimately agreed to "spy" on Plaintiffs.  JA 1358, 1362.  To that end, Ray provided Bradley with Plaintiffs' addresses and license plate numbers.  JA 1332-33.  Bradley then followed Boyd, Yarnall, and Marenbach at various points throughout the school year.  JA 1334-35.  To facilitate Bradley's surveillance, Ray would periodically call Bradley to let him know when one or more of the Plaintiffs were leaving the building.  JA 1334.  Bradley would do surveillance at Plaintiffs' homes, and would also take up watch outside Ray's home to make sure that nobody came by to do something to Ray.  JA 1337, 1363.  On one occasion, Bradley broke the side view mirror on one of Plaintiffs' cars.  JA 1333-34.  Bradley also owned a gun, which Ray knew about, and the two of them apparently discussed the importance of having a gun to support their surveillance scheme.  JA 1335, 1348.  Ray also provided Bradley with Plaintiffs' email addresses so that Bradley could find someone to research whether the Plaintiffs were "in cahoots together."  JA 1350.  Bradley then used Boyd's email address to monitor when Boyd logged in to her email account by adding her to his "friend" list.  JA 1346.  Though Ray and Bradley discussed paying Bradley for his surveillance efforts, Bradley was never directly paid for his efforts.  JA 1339.  Ray tried to compensate Bradley indirectly for his efforts by paying for joint social activities.  Id.

Ray did not do much to hide his disdain for Plaintiffs when speaking with Bradley, and was rather blunt when he asked Bradley to spy on Plaintiffs.  JA 1336.  Though Ray and Bradley talked about this spying candidly with each other, the two went to great lengths to prevent anyone else from knowing about their activities.  If Bradley came to Mifflin, Ray would introduce Bradley to people as his brother or Mr. Harris in an effort to conceal Bradley's true identity.  JA 1347.  Bradley also concealed his identity while doing some of the surveillance by

wearing a black ski mask.[4]  JA 1358.  The two would use code words for the spying activities,

such as "the process," and even had codenames for the Plaintiffs.  JA1352, 1357.  Bradley

provided Ray with an additional cell phone that Ray was supposed to use to call Bradley, which

would prevent tracing anything back to the School District phones.  JA 1335, 1352.  In addition,

Ray would email Bradley from his personal AOL email address instead of using an official email

address issued by the School District.  JA 1350.  Ray and Bradley even developed a contingency

plan in the event that Bradley got caught: Ray would use money stashed behind a picture on the

second floor of Bradley's house to bail Bradley out of jail.  JA 1335.  Ultimately, Ray and

Bradley were successful in keeping their activities a secret for many months, as Bradley never

told anybody else about the spying.  JA 1341.  None of the Plaintiffs ever realized that Bradley

was watching them.  JA 38, 40, 261-62, 393-94, 486, 1347.  The spying scheme was only

discovered when Bradley emailed Boyd on May 15, 2009, to let her know what had been going

on.  JA 184.  Bradley sent this email after Ray pressed criminal charges against Bradley related

to a physical fight between Bradley and Ray, during which Bradley cut Ray with a pair of

scissors.  JA 1340-41.

   Though the majority of the spying occurred off School District property and after typical

business hours, Bradley and Ray would, at times, utilize School District resources to further their

scheme.  For example, despite having a second cell phone specifically for the purpose of calling

Bradley, Ray would also use School District telephones to call Bradley to discuss the spying

scheme.  JA 1334.  Also, Bradley would often visit Ray at Mifflin – Bradley did not visit every

single day, but he was there "a lot."  JA 1339.  The majority of Bradley's visits to Mifflin were

"after hours."  JA 1362.  On certain occasions while at Mifflin, Ray gave Bradley access to his

---

[4]     Ray bought Bradley the first ski mask, but it was too small, so Bradley bought himself a second
ski mask that fit.  JA 1358.

laptop computer, and Bradley used Ray's computer in his presence.  JA 1342, 1362.  At some point, Bradley was able to view Plaintiff's formal evaluations by looking at Ray's computer while in Ray's office at Mifflin.  JA 1363.  In addition, Ray gave Bradley a flyer that Boyd left in the employee mailboxes at Mifflin to advertise a holiday party – the flyer was useful to Bradley because it had Boyd's address on it.  JA 1348.  Despite the foregoing, Bradley never had any reasons to believe that anybody associated with the School District was aware of what Ray and Bradley had been doing.  JA 1341.

    B.    <u>Procedural History</u>[5]

The School District filed the instant Motion *in Limine* on September 12, 2014.  ECF No. 179 (the "Motion").  Plaintiffs filed their Response in Opposition to the Motion on September 19, 2014.  ECF No. 182 (the "Opposition").  The School District filed its Reply in Support of the Motion on September 26, 2014.  ECF No. 190 (the "Reply").  This Court issued a Memorandum and Order resolving the parties' pending summary motions on September 30, 2014.  ECF Nos. 194-95.  On October 22, 2014, the School District filed a Motion for Leave to File a Supplemental Brief in Support of the Motion.  ECF No. 203.  On October 23, 2014, this Court signed an order granting the School District's Motion for Leave.  ECF No. 204.  The School District's Supplemental Brief in Support of the Motion was then docketed by the Clerk of the Court.  ECF No. 205 (the "Supplemental Brief").  The Court's October 23rd Order also provided notice to the parties that the Court was considering granting summary judgment on Count III in favor of Ray pursuant to Rule 56(f), and directed Plaintiffs and Ray to file any response to the Supplemental Brief on or before November 14, 2014.  Plaintiffs filed a Response in Opposition

---

[5]    This civil action has a relatively complex procedural history, which began with the filing of four separate complaints in May 2011.  Ultimately, those four separate actions were consolidated into a single case.  Given the lengthy history of this case, only the procedural history directly related to the instant motion is included here.

to the Supplemental Brief on November 14, 2014.  ECF No. 212 (the "Supplemental Opposition").  Ray did not file any documents related to the Motion.  Counsel for the School District and counsel for the Plaintiffs appeared in person for oral argument on the Motion on February 18, 2015, while Ray appeared *pro se* and participated by telephone.  ECF Nos. 216-17.

## II.    LEGAL STANDARD

Under Rule 56(f) of the Federal Rules of Civil Procedure, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Slagle v. Cnty. of Clarion, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted).  If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).

III.     **DISCUSSION**

A.     <u>Count III – Section 1983 Retaliation and Invasion of Privacy</u>

Section 1983 provides a legal mechanism for any person who suffered a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," when that deprivation occurred "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  The latter element is often referred to as the "under color of state law" requirement.  Generally, "acting under color of state law requires that the defendant in a Section 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)).  A state or local official who acts in their official capacity will typically be regarded as having acted under color of state law.  <u>See</u> <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 816 (3d Cir. 1994).  Furthermore, it is "firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."  <u>West</u>, 487 U.S. at 49-50.  In addition, a person who doesn't have actual authority to do something can still act "under color of state law" if they purport to act pursuant to official authority.  <u>See</u> <u>Barna</u>, 42 F.3d at 816.

The School District's argues that the Section 1983 claims against Ray for retaliation and invasion of privacy fail as a matter of law, as Ray could not possibly have acted under color of state law when he engaged in, or instructed Rodney Bradley to engage in, "spying" activities directed towards the Plaintiffs.  Supplemental Brief 5-11.  Plaintiffs point to Ray's use of School District computers and phones, and that Ray engaged in certain activities during school hours as

evidence that Ray was acting under color of state law when he allegedly orchestrated the spying. Supplemental Opposition 18-19.

The School District cites to two police officer cases to demonstrate that Ray's conduct could not be under color of state law with respect to Count III.  In <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809 (3d Cir. 1994), the Third Circuit held that two off-duty police officers did not act under color of state law when they got into a personal altercation with an individual outside of their police jurisdiction.  One of the police officers used a department-issued nightstick during the physical altercation, a weapon that the officer was only permitted to carry because of his official position.   The Third Circuit held that the use of the nightstick did not transform the incident into one under color of state law, considering there was no evidence the the altercation was the result of any official police concerns or that the police represented they were acting in furtherance of their official duties.  <u>Id.</u> at 818-19.  The School District also relies on the reasoning set forth in a summary judgment opinion in <u>Washington-Pope v. City of Philadelphia</u>, 979 F. Supp. 2d 544 (E.D. Pa. 2013).  There, an argument between two partner police officers escalated in seriousness, culminating in one officer drawing his department-issued firearm and pointing it at the other officer.  Ultimately, the Honorable Gene E. K. Pratter, in a an exceedingly well-researched and reasoned opinion, concluded that the officer was not acting under color of state law when he drew his firearm on his partner, as "nothing about [the drawing officer's] conduct indicated that he was purporting to act under state authority when he drew on [plaintiff]; nor did any actual or purported state authority advance his action."  <u>Id.</u> at 571-72.

Plaintiffs argue that the facts in this action are sufficiently different from those in <u>Barna</u> and <u>Washington-Pope</u>, and also argue that those cases are legally distinguishable on account of the specialized inquiry that courts utilize when determining whether police officers were acting

under color of state law.  Supplemental Opposition 16-22.  Plaintiffs also challenge the School

District's reliance Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995), arguing that the

Third Circuit found the individual involved to be a private actor not because he pursued his

unlawful actions secretly, but because the organization he volunteered for was considered a

private actor.  Supplemental Opposition 16.  Though I disagree with Plaintiffs' reading and

characterization of the Mark decision, I recognize that none of the cases cited by the parties are

perfectly analogous to the present set of facts.

     Though not cited by either party, the Ninth Circuit's opinion in McDade v. West, 223

F.3d 1135 (9th Cir. 2000), not only contains facts very analogous to the circumstances here, it

also directly addresses the legal issue that the Court must confront in this motion.  In McDade,

the Ninth Circuit addressed, for the first time, whether "a state employee who accesses

confidential information through a government-owned computer database acts 'under color of

state law.'" 223 F.3d at 1139.   In short, a husband's current wife used her position as a clerical

employee at a county DA's office to access a restricted statewide database containing the names

and addresses of persons eligible for certain public benefits.  The current wife relayed the

information contained in the database to her husband so that he could locate and serve his ex-

wife with legal papers related to a custody dispute.  The Ninth Circuit held that "[b]ecause [the

current wife's] status as a state employee enabled her to access the information, she invoked the

powers of the her office to accomplish the offensive act," and concluded that the current wife

"acted under color of state law since there is undisputed evidence that Ms. West abused her

responsibilities and purported or pretended to be a state officer during the hours in which she

accessed the computer."  Id. at 1140-41.

Another case not cited by either party, Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), is also worth noting.  In Phillips, the Plaintiff pleaded that two of the defendants, at the request of their suspended co-worker, accessed confidential information about an individual from computers at their place of employment – a 911 call center.  Id. at 228-29.  The two defendants knew that they were not authorized to disseminate the information to their suspended co-worker, and that their accessing of this information had no relationship to their jobs as dispatchers at the 911 call center.  Id. at 229.  Under these circumstances, the Third Circuit held that the Plaintiff pleaded sufficient facts to satisfy the fourth element of the state-created danger test – that "the state-actor used his authority to create an opportunity for danger that otherwise would not have existed."  Id. at 236-37.  Though the Third Circuit did not affirmatively hold that the dispatchers who logged in to the state computer system were state actors, the court did not disturb the apparent agreement of the parties on this issue.  Id. at 235 n.4.

In light of the legal framework outline above, having considered all of the facts presented by the parties in support of their respective summary judgment motions, and drawing all reasonable inferences in favor of Plaintiffs as the non-moving party, it is the opinion of this Court that Ray acted under color of state law when he allegedly accessed confidential information about Plaintiffs and subsequently disclosed that information to Bradley.

There are numerous acts that, when taken by themselves, would not be sufficient to support a finding that Ray acted under color of state law with respect to the allegations in Count III.  For example, in the same way that using department-issued weapons for personal disputes in Barna and Washington-Pope did not warrant a finding that the defendants acted under color of state law, Ray's periodic use of a School District telephone to call Bradley does not warrant a finding that Ray was acting under color of state law.  That Ray happened to reach for his desk

phone to call Bradley at times, instead of reaching for his personal cell phone or the second cell phone that Bradley provided, does not transform these calls into acts taken under color of state law.  For the same reason, the fact that Ray and Bradley met at Ray's Mifflin office does not warrant a finding that Ray was acting under of color of state law.  That Bradley would visit Ray at his place of work, instead of visiting him at his home, a restaurant, or anywhere else does not turn Ray and Bradley's meetings into conduct that is fairly attributable to the state.

Nevertheless, the key question here is whether Ray acted under color of state law when he researched and obtained Plaintiffs' personal information for the purpose of turning it over to Bradley.  On numerous occasions, the School District has described Ray's alleged actions as: (1) a "misuse of employee records" (Motion 2-3); (2) "not pursuant to [his] official powers" (Supplemental Brief 9); (3) "unauthorized" (Id.); (4) "not consistent with his official authority" (Id. at 10); and (5) a "misuse of such 'tools'" (Id. at 11).  While the School District may be correct to characterize Ray's alleged activities in the above-referenced fashion, in doing so the School District essentially admits that Ray acted under color of state law.  See West v. Akins, 487 U.S. 42, 50 (1988) ("a defendant in a § 1983 suit acts under color of state law when he abuses a position given to him by the State").  As noted by Judge Pratter, "[w]ere this not the case, then logically [a defendant] could only be held liable under § 1983 when a state statute, regulation or policy by its terms actually authorized him to violate the Constitution." Washington-Pope, 979 F. Supp. 2d at 553.  This conclusion naturally flows from long-standing Supreme Court precedent: "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." Classic, 313 U.S. at 326.  Ray's collection of Plaintiffs' confidential information (including their email addresses, home addresses, license plate numbers, and

employee files) was made possible only because he was clothed with the authority bestowed upon the principal of Mifflin.  Ray's alleged subsequent disclosure of this information to Bradley could not have occurred if Ray had not accessed this information on a laptop given to the principal of Mifflin, while exploiting the corresponding administrative computer privileges that Ray's position as principal afforded him.  See McDade, 223 F.3d 1140-41.  Accordingly, in light of this Court's conclusion that Ray was acting under color of state law, summary judgment will not be granted in favor or Ray on Count III of the Third Consolidated Amended Complaint.

      B.     Federal Rules of Evidence 401 and 402

Federal Rule of Evidence 401 defines relevant evidence as evidence that has any tendency to make a fact more or less probable than it would be without the evidence and the fact is one of consequence in determining the action. Fed. R. Evid. 401.  Federal Rule of Evidence 402 provides that irrelevant evidence is not admissible.  Fed. R. Evid. 402.

The School District argues that evidence relating to Bradley's alleged "spying" activities cannot be relevant to the sole count remaining against the School District (Count I – hostile work environment in violation of Title VII).  The argument is a simple as this: only conduct that Plaintiffs experienced and were aware can contribute to a hostile work environment claim, Plaintiffs were never aware of the alleged spying while it was going on, therefore, the alleged spying activities cannot contribute to Plaintiffs' hostile work environment claim.  Reply 3; Supplemental Brief 4-5.  In support of this argument, the School District cites to a number of cases to demonstrate that only conduct that is perceived by the plaintiff can be used to demonstrate whether such conduct is objectively or subjectively hostile.  See Cottrill v. MFA, Inc., 443 F.3d 629 (8th Cir. 2006); see also Toth v. California University of Pennsylvania, 844 F. Supp. 2d 611, 634 (W.D. Pa. 2012); Hallberg v. Eat'n Park, 1996 WL 182212, at *9 (W.D. Pa.

Feb 28, 1996).  While Plaintiffs do not appear to directly attack the logic of the School District's position, Plaintiffs do respond by suggesting that evidence of the alleged spying activities is relevant to Count I because such evidence demonstrates that Ray's impact on the alleged hostile work environment at Mifflin was motivated by Plaintiffs' race.  Opposition 2-5.

The School District is correct that Plaintiffs cannot rely on conduct that they were unaware of during the relevant period to demonstrate that their workplace was objectively or subjectively hostile.  See Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240 (11th Cir. 2014); Cottrill, 443 F.3d at 636; Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000); Pryor v. Seyfarth, Shaw, Fairweather & Geraldson, 212 F.3d 976, 978 (7th Cir. 2000); Burnett v. Tyco Corp., 203 F.3d 980, 981 (6th Cir. 2000); Hirase-Doi v. U.S. W. Commc'ns, Inc., 61 F.3d 777, 782 (10th Cir. 1995).  Nevertheless, demonstrating that they suffered intentional discrimination because of their race is an essential element of Plaintiffs' hostile work environment claim. Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).  At this point, there is at least some reason to believe that testimony and evidence about the alleged spying activities will assist the jury in determining whether the alleged hostile work environment created by Ray and others was related to Plaintiffs' race.[6]  Accordingly, I do not find that evidence of the alleged spying activities is necessarily irrelevant to the issues presented in Count I.[7]

---

[6]     For example, Bradley testified at his deposition that Ray moved forward with the spying, in part, because Plaintiffs "were making his life quite complicated, real miserable."  JA 1333.  This alleged admission by Ray is set against the backdrop of Ray allegedly being aware that there were major racial problems at Mifflin and that there was an ongoing investigation into those race-related issues.  JA 1336. According to Bradley, Ray admitted that there was a lot of racism going on during the 2008-09 school year – the same school year during which Ray was allegedly informed that the "Caucasian teachers were against him and they were not to be trusted" and during which the alleged spying took place.  JA 1331, 1336.

[7]     The School District may, by April 10, 2015, submit a brief addressing whether evidence of the alleged spying activities can be considered by the jury in determining Ray's motive and intent with respect to the alleged actions at issue in Count I.  Any such brief should be double-spaced, typed in 12-point font, and shall not exceed three pages.  If such a brief is served and filed, Plaintiffs and Ray will be afforded an opportunity to respond.

C.    Federal Rule of Evidence 403 and Federal Rule of Civil Procedure 42(b)

Federal Rule of Evidence 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Federal Rule of Civil Procedure 42(b) permits a court to order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).

The School District seeks to exclude evidence regarding the alleged spying activities from any trial in which it is a party, as the School District because it believes that the evidence's probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence under Federal Rule of Evidence 403.  Supplemental Brief 3.  Having determined that Ray was acting under color of state law with respect to the alleged conduct in Court III, and thus having declined to enter summary judgment on that count, it is clear that evidence of the alleged spying activity is central to Count III and Plaintiffs must be allowed to present such evidence to pursue those claims.  The School District admits as much.  See Supplemental Brief 1.  Faced with evidence that is central to a claim against its co-defendant, but which it views as unduly prejudicial to the defense of the sole claim against it, the School District seeks a separate trial from Ray.[8]  Supplemental Brief 2 n.1.  The School District proposes that the Court order two trials in this action – one trial to determine liability and damages against the School District on

---

[8]    Though the School District makes reference to "severance" and "bifurcation" in the Supplemental Brief, I interpret its reference to Rule 42(b) of the Federal Rules of Civil Procedure to mean that the School District seeks separate trials in this action, and not a severance pursuant to Rule 21 or bifurcation of the liability and damages phases.

Plaintiff's hostile work environment claim and against Ray on Plaintiff's Section 1983 equal protection claim, and one trial to determine liability and damages against Ray on Plaintiff's Section 1983 claim for retaliation, invasion of privacy.  Id.

In considering whether separate trials should be ordered, courts must consider "the convenience of the parties, avoiding prejudice, and promoting expedition and economy." BancMortgage Fin. Corp. v. Guarantee Title & Trust Co., 2000 WL 1521600, at *2 (E.D. Pa. Oct. 6, 2000).  In addition, as recognized by the School District, this Court has an overarching duty "to facilitate the just, speedy, and inexpensive determination of this action."  Supplemental Brief 3 (citing Fed. R. Civ. P. 1).  Single trials are generally favored, as "a single trial will generally lessen the delay, expense, and inconvenience to the parties and the courts."  Corrigan v. Methodist Hosp., 160 F.R.D. 55, 56 (E.D. Pa. 1995) (quotation marks and citation omitted).

Here, the School District makes no argument with respect to the first consideration – "convenience of the parties," or the third consideration – "promotion of expedition and economy."  This was a wise strategic decision, as there is no reasonable argument to be made that conducting two trials involving overlapping facts would be more convenient for any of the parties, including the School District and its witnesses, or further an expedient and economical resolution of this action.  Having conceded this these considerations do not militate in favor of separate trials, the School District relies entirely on the second consideration – "avoiding prejudice" – to support its request.  While there is some danger of prejudice under the circumstances, the School District has failed to demonstrate that they would be so unduly prejudiced by a joint trial on all of Plaintiffs' claims that separate trials should be ordered. Accordingly, the School District's request for separate trials will be denied.

To minimize any potential prejudice resulting from a joint trial, the Court will permit the parties to propose whatever prophylactic or curative measures they deem appropriate, including: (1) comprehensive jury voir dire; (2) cautionary warnings and limiting instructions to the jury; and (3) tailored verdict forms and jury interrogatories.[9]  See Graudins v. Retro Fitness, LLC, 921 F. Supp. 2d 456, 468 (E.D. Pa. 2013) (noting commonly used methods to prevent prejudice in joint trials).  Such measures can be effective here, and are consistent with the longstanding presumption in the Third Circuit that juries follow the instructions given by district courts. United States v. Hakim, 344 F.3d 324, 330 (3d Cir. 2003).  The Court has no reason to believe that the jury in this action will be unable to live up to this presumption, or that there is an "'overwhelming probability' that the jury will be unable to follow [the instruction] and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."  United Stated v. Newby, 11 F.3d 1143, 1147 (3d Cir. 1993) (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, the School District's Motion in Limine will be denied.  The Court will not grant summary judgment pursuant to Rule 56(f) on Count III in favor of Ray; the Court will not preclude Plaintiffs from offering evidence regarding Bradley's alleged spying activities; and the Court will not order separate trials in this action pursuant to Rule 42(b).

An appropriate Order follows.

---

[9]      The Court recognizes that both the wording and the timing of any instructions or warnings to the jury are important.  See Hakim, 344 F.3d 329-31.  Accordingly, the Court invites the School District to propose, as soon as is practicable, whatever preliminary jury instructions, mid-trial limiting instructions, and/or final jury instructions it believes are necessary to address the perceived prejudice.  The Court will entertain motions throughout the course of the trial to read appropriate limiting instructions to the jury regarding the proper purpose(s) for which they may consider certain evidence.