```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLLEEN YARNALL, et al.          :        CIVIL ACTION
                                 :
          v.                     :
                                 :
THE PHILADELPHIA SCHOOL          :
DISTRICT, et al.                 :        NO. 11-3130
```

MEMORANDUM

Bartle, J.                                        April 18, 2016

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983. Plaintiffs Colleen Yarnall ("Yarnall"), Debra McKibben Marenbach ("Marenbach"), Nicole Boyd ("Boyd"), and Marta Ciccimaro ("Ciccimaro"), teachers in the Philadelphia public schools, obtained a jury verdict and an award of damages on June 15, 2015 against defendant The School District of Philadelphia ("SDP") for a hostile work environment under Title VII and against defendant Charles Ray, II ("Ray") for equal protection violations, invasion of privacy, and retaliation under § 1983.

Now before the court are two motions. Plaintiffs have moved "for Injunctive Relief to Require Amendment of the Defendant's Harassment Policy and to Amend the Final Order Entered on June 16, 2015 to Include Post Judgment Interest on Monetary Awards." Plaintiffs seek a permanent injunction ordering SDP to

develop and adopt a new written antiharassment policy,[1] barring SDP and its employees from creating or facilitating a hostile work environment, requiring SDP to take certain steps to respond to harassing conduct, and mandating antiharssment training for SDP supervisors and managers.  They also seek postjudgment interest.  Plaintiffs thereafer filed a supplemental motion for injunctive relief with an affidavit setting forth facts that were not in the record at the trial.

I.

In May 2011, each plaintiff filed an action in this District.  Their cases were eventually consolidated in June 2012.  On August 21, 2014, plaintiffs filed a "Third Consolidated Amended Complaint," which is their most recent pleading.  In it they alleged:  a race discrimination claim against SDP under Title VII, based on events that occurred during the 2008-2009 school year; an equal protection claim against Ray, Shirl Ishmael ("Ishmael"), and Shirl Gilbert ("Gilbert") under § 1983; an invasion of privacy and retaliation claim against Ray, also under § 1983; a discrimination claim against SDP, Ray, Ishmael, and Gilbert under the Pennsylvania Human Relations Act ("PHRA"); and a claim against SDP styled "2012-2013 Title VII claims."

---

1. Plaintiffs have supplied the court with a proposed antiharassment policy.

The claims in plaintiffs' Third Consolidated Amended Complaint were based primarily on events that took place at Mifflin Elementary School ("Mifflin"), where plaintiffs worked at all relevant times, during the 2008-2009 school year.  Plaintiffs, all of whom are Caucasian, alleged that Ray, who is African American, had been hired as Mifflin's principal prior to the start of the school year.  They claimed that Ray began discriminating against them by subjecting them to schedule and classroom changes, reductions in access to supplies, and other inconveniences that were not experienced by other teachers.  Plaintiffs alleged that Ishmael encouraged this conduct and that Gilbert condoned it.[2]  Plaintiffs also asserted that Ray gave out plaintiffs' personal information to his friend Rodney Bradley, whom he persuaded to spy on them.

Following an investigation into this surveillance scheme, Ray resigned from Mifflin in June 2009.  Ishmael took a leave of absence in late 2009 or early 2010 but returned to Mifflin in 2012.  Plaintiffs maintained that upon her return they were once again subjected to a hostile work environment during the 2012-2013 school year due to the actions of Ishmael.

---

2.   Ishmael and Gilbert are both African American.

SDP, Ray, Ishmael, and Gilbert all moved for summary judgment.[3]  On September 30, 2014, the Honorable L. Felipe Restrepo,[4] then a Judge of this Court, entered judgment in favor of SDP on plaintiffs' Title VII claim insofar as it alleged discrimination but denied summary judgment insofar as the claim alleged a hostile work environment.  Judge Restrepo granted judgment in favor of Gilbert and Ishmael on the § 1983 equal protection claim and in favor of all four defendants on the PHRA claim.[5]  Finally, he granted judgment in favor of SDP on the "2012-2013 Title VII claims."  Consequently, only three claims proceeded to trial:  the Title VII hostile work environment claim against SDP, the § 1983 equal protection claim against Ray, and the § 1983 invasion of privacy and retaliation claim against Ray.  All three of these claims were based on the events of the 2008-2009 school year.

---

3.  Plaintiffs also sought summary judgment on the limited issue of whether they had been represented at the time they submitted intake questionnaires to the Equal Employment Opportunity Commission.  They argued that they were not represented and that this was relevant to whether equitable tolling should apply to their filing of administrative charges.  Their motion was denied.

4.  Judge Restrepo presided over this matter until he was confirmed to the United States Court of Appeals for the Third Circuit in January 2016.  On January 26, 2016, the case was reassigned to the undersigned.

5.  Judge Restrepo construed Ray's motion as seeking judgment on the PHRA claim alone.  Accordingly, he declined to consider whether Ray was entitled to judgment on either § 1983 claim.

On June 15, 2016 the jury returned its verdict. On the Title VII hostile work environment claim the jury found in favor of plaintiffs Yarnall, Boyd, and Ciccimaro against SDP. However, in answer to a special interrogatory, the jury found that none of them had suffered any actual injury. Accordingly, it awarded nominal damages of $1 to each of them on that claim. The jury found in favor of SDP and against Marenbach on the Title VII claim because Marenbach had not exhausted her administrative remedies.

On the § 1983 equal protection claim, the jury returned a verdict in favor of all four plaintiffs against Ray and awarded each plaintiff $1 in nominal damages and $2,000 in punitive damages. Finally, the plaintiffs also prevailed against Ray on the § 1983 invasion of privacy and retaliation claims. The jurors determined that each plaintiff had suffered an actual injury due to Ray's violation of her right to privacy, with each plaintiff awarded $1,000 in compensatory damages and $2,000 in punitive damages. As to Ray's retaliatory conduct, however, the jurors found that no plaintiff suffered an actual injury. Accordingly, each plaintiff received $1 in nominal damages and $3,500 in punitive damages for that claim.

On July 7, 2015, within a month of the entry of judgment, plaintiffs filed their motion for a permanent injunction and postjudgment interest. They filed their supplemental motion on November 12, 2015.

II.

Title VII permits the court to order injunctive relief in order to prevent unlawful employment practices from continuing. It provides in relevant part that:

> [i]f the court finds that the [employer] has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court <u>may</u> enjoin the [employer] from engaging in such unlawful employment practice, and order such affirmative action <u>as may be appropriate</u>, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , <u>or any other equitable relief as the court deems appropriate</u>.

42 U.S.C. § 2000e-5(g)(1) (emphasis added).

As this statutory language suggests, § 2000e-5(g)(1) gives courts broad equitable discretion to fashion injunctive remedies for violations of Title VII. <u>Franks v. Bowman Transp. Co., Inc.</u>, 424 U.S. 747, 763 (1976); <u>Spencer v. Wal-Mart Stores, Inc.</u>, 469 F.3d 311, 315 (3d Cir. 2006). The bounds of this discretion "are set by the purposes of Title VII, which are to prevent discrimination and achieve equal employment opportunity in the future . . . ." <u>E.E.O.C. v. KarenKim, Inc.</u>, 698 F.3d 92, 100 (2d Cir. 2012) (quoting <u>Berkman v. City of N.Y.</u>, 705 F.2d 584, 594 (2d Cir. 1983)). Under Title VII, "federal courts are empowered to fashion such relief as the particular circumstances of a case may require." <u>Franks</u>, 424 U.S. at 763.

In order to obtain an injunction, "the moving party must satisfy the court that relief is needed.  The necessary determination is that there exists some cognizable danger of recurrent violation . . . ."  KarenKim, Inc., 698 F.3d at 100 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).  To make such a showing in a Title VII case, a plaintiff must demonstrate

> (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).[6]

### III.

Plaintiffs have not pointed to any facts in the record that entitle them to prospective injunctive relief.  Significantly, plaintiffs base their initial motion for an injunction primarily on

---

6. Although eBay, Inc. is not a Title VII case, courts have routinely utilized its four-factor test in the Title VII context and in cases involving the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., which relies on the same enforcement provisions that apply to Title VII claims.  See, e.g., A Helping Hand, LLC v. Baltimore Cty., MD, 355 F. App'x 773, 775-76 (4th Cir. 2009); Prise v. Alderwoods Grp., Inc., No. 06-1470, 2010 WL 3432299, at *1, *4 (W.D. Pa. Aug. 31, 2010); cf. Antoinetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1174-75 (9th Cir. 2010).  Furthermore, plaintiffs and SDP both urge the court to apply eBay, Inc. to this matter.

events which took place during the 2008-2009 school year, when Ray was the principal of Mifflin.  The claims on which plaintiffs ultimately prevailed at trial were intertwined with Ray's presence at Mifflin, which ended on June 30, 2009.  The hostile work environment for which SDP was found to have been liable existed during the 2008-2009 school year.[7]  The jury did not consider plaintiffs' claims that SDP violated Title VII by engaging in disparate treatment during the 2008-2009 school year or that SDP violated Title VII during the 2012-2013 school year because the court had already held that SDP was entitled to summary judgment on those claims.

      Ray's actions were the basis for the hostile work environment that the jury found to have existed during the 2008-2009 school year.  Ray's employment with SDP ended on June 30, 2009.  Consequently, there is no "cognizable danger of recurrent violation" of Title VII.  See KarenKim, Inc., 698 F.3d at 100 (quoting W.T. Grant Co., 345 U.S. at 633).  Although some of plaintiffs' claims involved conduct occurring in subsequent school years, Judge Restrepo had entered summary judgment for

---

7.  The relevant jury interrogatory asked with respect to each plaintiff:  "Do you unanimously find by a preponderance of the evidence that during the 2008-2009 school year, the School District of Philadelphia intentionally discriminated against [plaintiff] on the basis of her race, by subjecting her to a hostile work environment?"  The jurors answered "yes" as to Yarnall, Boyd, and Ciccimaro.  They did not reach this question as to Marenbach because they determined that she had failed properly to exhaust her administrative remedies.

defendants on those claims before the case proceeded to trial. Plaintiffs do not call our attention to anything in the pretrial or trial record which demonstrates that plaintiffs suffered an irreparable injury, that monetary damages are inadequate to compensate them, that "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," or that "the public interest would not be disserved by a permanent injunction."  See eBay Inc, 547 U.S. at 391.

Furthermore, two of the three claims on which plaintiffs prevailed at trial involved § 1983 violations by Ray and not Title VII violations by SDP.  As noted above, plaintiffs seek an injunction pursuant to Title VII's enforcement provisions.  They have not explained why Ray's violations of § 1983 warrant the entry of an injunction pursuant to Title VII. Even construing plaintiffs' motion as seeking an injunction pursuant to the court's equitable authority and not Title VII, we cannot agree that they are entitled to the relief they seek. As we have explained, Ray's employment with SDP has been terminated, and thus the risk of future unlawful conduct by Ray, or unlawful conduct of that character and degree, has all but evaporated.[8]

---

8. We are mindful that plaintiffs' 2008-2009 Title VII claim also implicated the conduct of Ishmael and that Ishmael has returned to work at Mifflin.  However, the court entered judgment in favor of SDP on plaintiffs' 2012-2013 school year

Plaintiffs point to absolutely nothing in the trial record that could support their claim for a permanent injunction. Indeed, their supporting brief contains almost no references to the trial record at all. On a few occasions, they attempt to summarize the testimony of various trial witnesses without citing to the record. In a footnote contained in their reply brief, they attempt to justify this lack of citations by explaining: "plaintiffs have not purchased the trial transcripts." As our Court of Appeals has colorfully emphasized, "'[j]udges are not like pigs, hunting for truffles buried in' the record." Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quoting United States v. Dunkel, 927 F.2d 955, 756 (7th Cir. 1991)). If plaintiffs cannot cite to the record with specificity, they cannot expect the court to scour it for evidence that supports their motion.

The parties make much of the antiharassment policy which is currently in place at SDP and which went into effect in August 2011. Plaintiffs believe it to be inadequate. Again, they identify nothing in the trial record to indicate that this policy is insufficient to prevent discrimination and harassment. Nor have plaintiffs cited any evidence that they continue to

---

claim, which was based in large part on Ishmael's return to the school. Plaintiffs offer no argument as to why Ishmael's continued presence at Mifflin justifies the entry of a permanent injunction.

experience violations of Title VII as a result of the policy's purported inadequacy or that there is a risk of such violations occurring in the future.

It appears to be plaintiffs' position that notwithstanding the trial record, we are obligated to enter a permanent injunction whenever a Title VII violation is found to have occurred.  In support of this contention they cite Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975).  In the section of Albemarle Paper Co. referenced by plaintiffs, the Supreme Court addressed a district court's denial of a claim for back pay under Title VII brought by a class of African American paper mill employees.  The Court declared that "[w]here racial discrimination is concerned, 'the (district) court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'"  Id. at 418 (quoting Louisiana v. United States, 380 U.S. 145, 154 (1867)). This proclamation, which had to do with back pay and not prospective injunctive relief, is of no help to plaintiffs. Albemarle Paper Co. merely instructs us to craft relief "which will so far as possible" prohibit similar discrimination in the future.  Id.  It does not direct us to enter broad injunctions where no cognizable risk of future harm has been identified.

Plaintiffs also urge that we must grant injunctive relief unless SDP can prove that there is no risk of future Title VII violations. It is true that some Courts of Appeal have held that once the existence of a Title VII violation has been established, "absent clear and convincing proof of no reasonable probability of further noncompliance with the law a grant of injunctive relief is mandatory." James v. Stockham Valves & Fittings Co., 559 F.2d 310, 354 (5th Cir. 1977); see also E.E.O.C. v. Goodyear Aerospace Corp., 813 F.2d 1539. 1544 (9th Cir. 1987). Other appellate courts have held that "[t]here is no presumption that broad injunctive relief . . . should issue upon a finding of intentional discrimination." E.E.O.C. v. Siouxland Oral Maxillofacial Surgery Assocs., L.L.P., 578 F.3d 921, 928 (8th Cir. 2009); see also E.E.O.C. v. Gen. Lines, Inc., 865 F.2d 1555, 1565 (10th Cir. 1989).

The parties cite no decisions of our Court of Appeals addressing the scope of our obligation to enter an injunction under these circumstances, and we are aware of none. However, in a well-reasoned opinion, Judge Conti of the Western District of Pennsylvania has rejected the notion that a prevailing plaintiff in a Title VII action is automatically entitled to injunctive relief. She explained: "The court simply cannot agree with plaintiff's argument that in every Title VII case in which a plaintiff prevails on a claim a permanent injunction

should issue against the employer.  If the court were to follow that reasoning, the standard for obtaining injunctive relief would be eviscerated."  Prise v. Alderwoods Grp., Inc., No. 06-1470, 2010 WL 3432299, at *5 (W.D. Pa. Aug. 31, 2010).  In our view, the logic of Prise applies here.  "[T]he standard for obtaining injunctive relief would be eviscerated" if we were required to enter an injunction based upon conduct that was limited to a single school year and concluded when the aggressor was terminated.  See id.

In sum, plaintiffs have directed us to no evidence in the record that a permanent injunction is warranted.  Their motion for injunctive relief will be denied.

IV.

Perhaps recognizing that the existing record does not support their request for a permanent injunction, plaintiffs filed a "Supplemental Motion for Injunctive Relief" on November 12, 2015.  In it, they urge that an injunction is warranted because of harassment they have experienced during the 2015-2016 school year.  An affidavit attached to the supplemental motion and signed by Yarnall, Boyd, and Ciccimaro describes this purported harassment.  The affidavit provides examples, most of which do not implicate SDP employees but instead involve the actions of teachers toward students and of African American parents toward teachers.  Plaintiffs request the court to conduct

-13-

an evidentiary hearing on the issue of whether a permanent injunction is warranted.

Plaintiffs in effect seek to expand this action far beyond what is alleged in the Third Consolidated Amended Complaint and what the discovery and trial disclosed.  They now reference conduct that had nothing to do with Charles Ray or the 2008-2009 school year.  Such an expansion would be highly improper.  The Third Consolidated Amended Complaint described conduct occurring during the 2008-2009 and 2012-2013 school years, and the trial concerned only the 2008-2009 school year.  Plaintiffs now ask us to reopen the record to include events occurring over six years later, during the 2015-2016 school year.  If plaintiffs believe they have a cognizable Title VII claim based on these recent events, then they are free to file a separate action.  However, they may not extend the bounds of this action to include what are essentially new claims.  The supplemental motion of plaintiffs for a permanent injunction will be denied.

V.

Finally, plaintiffs ask us to enter an order reopening the judgment in order to include "[t]he post-judgment statutory interest rate of .14%, consistent with 28 U.S.C. § 1961"[9] to the

---

9. Section 1961 provides in pertinent part:

> **(a)** Interest shall be allowed on any money judgment in a civil case recovered in a

monetary award.  Requests to alter or amend judgments are governed by Rule 59(e) of the Federal Rules of Civil Procedure, which provides that such requests must be filed within 28 days of the entry of the judgment.

While prejudgment interest "normally is considered an element of the judgment itself" and is governed by Rule 59(e), postjudgment interest is not.  <u>S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.</u>, 60 F.3d 305, 308 (7th Cir. 1995).  Instead, "post-judgment interest is a creature of statute, not of contract or judicial determination," and is "earned whether or not recited in the judgment."  <u>Litton Sys., Inc. v. Am. Tel. & Tel. Co.</u>, 568 F. Supp. 507, 511 n.2 (S.D.N.Y. 1983).  Consequently, insofar as plaintiffs' motion seeks amendment of

---

district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment . . .

**(b)** Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

the judgment to include postjudgment interest, it will be denied as moot.