IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLLEEN YARNALL, et al.          :          CIVIL ACTION
                                 :
          v.                     :
                                 :
THE PHILADELPHIA SCHOOL          :
DISTRICT, et al.                 :          NO. 11-3130

<u>MEMORANDUM</u>

Bartle, J.                                        August 19, 2016

This is an action under Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq</u>., and 42 U.S.C.
§ 1983.  Plaintiffs Colleen Yarnall ("Yarnall"), Debra McKibben
Marenbach ("Marenbach"), Nicole Boyd ("Boyd"), and Marta Ciccimaro
("Ciccimaro"), teachers in the Philadelphia public schools,
obtained a jury verdict and an award of damages on June 15, 2015
against defendant The School District of Philadelphia ("SDP") for a
hostile work environment under Title VII and against defendant
Charles Ray, II ("Ray") for equal protection violations, invasion
of privacy, and retaliation under § 1983.  On April 18, 2016, the
court denied the motion and supplemental motion of plaintiffs for
injunctive relief.

Now before the court is the petition of plaintiffs for
attorney's fees and costs against SDP.

I.

Plaintiffs, all of whom are Caucasian, were teachers at Mifflin Elementary School ("Mifflin"), a public school in the East Falls section of Philadelphia.  At the start of the 2008-2009 school year, defendant Ray, who is African American, was hired as Mifflin's principal.  Plaintiffs claimed that Ray began to create a hostile work environment, discriminating against them by subjecting them to public reprimands and criticism, schedule and classroom changes, reductions in access to supplies, and other inconveniences that were not experienced by other teachers.  Plaintiffs alleged that Ray's conduct was encouraged by another Mifflin teacher named Shirl Ishmael ("Ishmael").  They also contended that Shirl Gilbert ("Gilbert"), who was an SDP administrator at the time, condoned Ray's actions.[1]

Plaintiffs further asserted that Ray persuaded his friend Rodney Bradley ("Bradley") to spy on them.  According to plaintiffs, Ray accessed personal information about them, such as their home addresses, and passed it along to Bradley.  He told Bradley he hoped to frighten plaintiffs and wanted them "gone from the building."  After surveilling plaintiffs for several months, Bradley ultimately disclosed his actions to SDP administrators and

---

1.  Ishmael and Gilbert are both African American.

to plaintiffs.  Following an investigation into the surveillance
scheme, Ray resigned from Mifflin in June 2009.

In May 2011, each plaintiff filed a lawsuit in this
court.  Each amended her complaint in January 2012.  Their cases
were eventually consolidated in October 2012.  In April 2013, The
Honorable L. Felipe Restrepo, then a Judge of this Court,[2] granted
in part and denied in part a motion of defendants to dismiss
plaintiffs' claims.  He dismissed:  plaintiffs' Title VII gender
discrimination and retaliation claims; the claims they had raised
under the Age Discrimination in Employment Act; all of their
state-law tort claims, including derivative loss of consortium
claims raised by their spouses; and their § 1983 claims against
SDP, the Philadelphia Federation Teachers Union, and four
individual school administrators.  Judge Restrepo declined to
dismiss plaintiffs' Title VII race discrimination claims, their
claims under the Pennsylvania Human Relations Act ("PHRA"), and
their § 1983 claims against Ray.  SDP thereafter filed a motion for
reconsideration, and Judge Restrepo subsequently dismissed
plaintiffs' PHRA gender discrimination and retaliation claims.

On August 21, 2014, plaintiffs filed a "Third
Consolidated Amended Complaint," which is their most recent

---

2.  Judge Restrepo presided over this matter until he was
confirmed to the United States Court of Appeals for the Third
Circuit in January 2016.  On January 26, 2016, the case was
transferred to the undersigned.

pleading.  In it they alleged:  a race discrimination claim against
SDP under Title VII, based on events that occurred during the
2008-2009 school year; an equal protection claim against Ray,
Ishmael, and Gilbert under § 1983; an invasion of privacy and
retaliation claim against Ray, also under § 1983; a discrimination
claim against SDP, Ray, Ishmael, and Gilbert under the PHRA; and a
claim against SDP styled "2012-2013 Title VII claims."  They sought
damages in excess of $150,000 as well as injunctive relief.

        SDP, Ray, Ishmael, and Gilbert all moved for summary
judgment.[3]  On September 30, 2014, Judge Restrepo entered judgment
in favor of SDP on plaintiffs' Title VII claim insofar as it
alleged discrimination but denied summary judgment insofar as the
claim alleged a hostile work environment.  Judge Restrepo granted
judgment in favor of Gilbert and Ishmael on the § 1983 equal
protection claim and in favor of all four defendants on the PHRA
claim.[4]  Finally, he granted judgment in favor of SDP on the
"2012-2013 Title VII claims."

---

3.  Plaintiffs also sought summary judgment on the limited issue
of whether they had been represented at the time they submitted
intake questionnaires to the Equal Employment Opportunity
Commission.  They argued that they were not represented and that
this was relevant to whether equitable tolling should apply to
their filing of administrative charges.  Their motion was
denied.

4.  Judge Restrepo construed Ray's motion as seeking judgment on
the PHRA claim alone.  Accordingly, he declined to consider
whether Ray was entitled to judgment on either § 1983 claim.

In January 2015, the parties attended a settlement conference during which plaintiffs demanded $200,000.  SDP refused to settle the matter for any amount over $20,000.

As a result of the court's summary judgment rulings, only three claims proceeded to trial:  the claim under Title VII that SDP created a hostile work environment by permitting plaintiffs to be harassed by Ray; the claim under § 1983 that Ray denied plaintiffs of their right to equal protection by engaging in such harassment[5]; and the § 1983 invasion of privacy and retaliation claim against Ray based on his alleged surveillance scheme.  All three of these claims were based on the events of the 2008-2009 school year.

On June 15, 2016, the jury returned its verdict. On the Title VII hostile work environment claim, the jury found in favor of plaintiffs Yarnall, Boyd, and Ciccimaro against SDP.  However, in answer to a special interrogatory, the jury found that none of them had suffered any actual injury.  Accordingly, it awarded

---

5.  Judge Restrepo ruled prior to trial that Ray's surveillance of plaintiffs was not relevant to the alleged hostile work environment at issue in plaintiffs' Title VII claim and § 1983 equal protection claim.  He reasoned that plaintiffs could not "rely on conduct that they were unaware of during the relevant period to demonstrate that their workplace was objectively or subjectively hostile."  He also barred plaintiffs from arguing that SDP's response to Ray's surveillance contributed to the hostile work environment.  Plaintiffs, however, could argue that Ray's requests to Bradley were circumstantial evidence that Ray was motivated by plaintiffs' race to create a hostile work environment.  Judge Restrepo instructed the jury accordingly.

nominal damages of $1 to each of them on that claim.  The jury

found in favor of SDP and against Marenbach on the Title VII claim

because Marenbach had not exhausted her administrative remedies.

On the § 1983 equal protection claim, which was based on

Ray's alleged creation of a hostile work environment, the jury

found in favor of all four plaintiffs against Ray and awarded each

plaintiff $1 in nominal damages and $2,000 in punitive damages.

Finally, the plaintiffs prevailed against Ray on the § 1983

invasion of privacy and retaliation claims.  The jurors determined

that each plaintiff had suffered an actual injury due to Ray's

violation of her right to privacy, with each plaintiff awarded

$1,000 in compensatory damages and $2,000 in punitive damages.  As

to Ray's retaliatory conduct, however, the jurors found that no

plaintiff suffered an actual injury.  Accordingly, each plaintiff

received $1 in nominal damages and $3,500 in punitive damages for

that claim.

Plaintiffs thereafter moved for a permanent injunction

against SDP.  Among other things, they asked us to order SDP to

adopt a new antiharassment policy.  We denied their motion on April

18, 2016.

Plaintiffs subsequently filed the instant petition

seeking $236,550 in attorney's fees for the work of attorney Carole

Hendrick ("Hendrick"), $24,381 in attorney's fees for the work of

attorney Frederick Stanczak, and $27,317.24 in costs of litigation, as well as pre- and post-judgment interest.

## II.

Significantly, the petition now before us appears to seek attorney's fees and costs from SDP alone and not from Ray. Plaintiffs' filing includes no motion articulating the relief they request.  Plaintiffs have, however, submitted with their petition a form of order which reads as follows:

> AND NOW, this      day of     , 2016, upon consideration of Plaintiffs [sic] petition for attorney [sic] fees and costs and any answers thereto the Petition is GRANTED.  <u>The Defendant School District of Philadelphia</u> shall pay the following fees and costs forthwith:
>
> 1. The sum of $236,550.00 to Attorney Hendrick[;]
>
> 2. The sum of $24,381.00 to Attorney Stanczak[;]
>
> 3. The sum of $27,317.24 toward costs of litigation[; and]
>
> 4. Pre and Post judgment interest pursuant to 28 U.S.C. [§§] 1961(a) and (b).

(Emphasis added.)  The form of order makes no mention of defendant Ray.  Moreover, plaintiffs' memorandum of law in support of their petition focuses almost exclusively on the liability of SDP.  For example, plaintiffs rely heavily on the decision of the Supreme Court in <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992), which addresses the circumstances under which attorney's fees should be awarded to a

plaintiff who receives only nominal damages from a defendant.  They
also focus on Title VII, pursuant to which they brought their claim
against SDP, and on the hostile work environment which the jury
found had been created by SDP.  Plaintiffs' memorandum contains no
claim that Ray's liability under § 1983 supports their request for
attorney's fees.

Perhaps realizing that their petition focused on SDP's
liability to the exclusion of Ray's, plaintiffs submitted a new
form of order with their reply memorandum.  That form of order
states as follows:

> AND NOW, this     day of    , 2016, upon
> consideration of Plaintiffs [sic] petition for
> attorney [sic] fees and costs and any answers
> thereto the Petition is GRANTED.  <u>The
> Defendants</u> shall pay the following fees and
> costs forthwith:
>
> 1. The sum of $236,550.00 to Attorney
>    Hendrick[;]
>
> 2. The sum of $24,381.00 to Attorney
>    Stanczak[;]
>
> 3. The sum of $27,317.24 toward costs of
>    litigation[; and]
>
> 4. Pre and Post judgment interest pursuant to
>    28 U.S.C. [§§] 1961(a) and (b).

(Emphasis added.)  The reply brief asserts that "[p]laintiffs rely
on § 1983 for fees against Ray" and offers a cursory statement of
§ 1983's damages provision.  The bulk of the reply brief, however,
reiterates plaintiffs' position that their request is supported by

-8-

the authority which governs fee requests by parties who have received only nominal damages.

Of course, plaintiffs cannot raise new arguments for the first time in a reply memorandum, as they have attempted to do here.  See United States v. Cruz, 757 F.3d 372, 387 (3d Cir. 2014). In any event, both the memorandum in support of the petition and the reply memorandum focus almost exclusively on the liability of SDP.  We therefore construe plaintiffs' motion as seeking attorney's fees from SDP alone.

III.

As noted above, plaintiffs Yarnall, Boyd, and Ciccimaro prevailed against SDP on their Title VII hostile work environment claim and received an award of nominal damages. Title VII's enforcement provisions establish in relevant part that in any action under the statute, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).  A plaintiff who prevails in an action under § 1983 may seek fees under a nearly identical provision set forth in the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.  That statute provides in relevant part that in a § 1983 proceeding, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  It is well-established that the standards

-9-

governing the two fee provisions are virtually identical and that cases interpreting § 1988 may be used to interpret § 2000e-5(k).  See, e.g., Barnes Found. v. Twp. Of Lower Merion, 242 F.3d 151, 158 n.6 (3d Cir. 2001).

In Farrar, 506 U.S. 103, the Supreme Court set forth guidance for courts confronted with § 1983 attorney's fee requests from civil rights plaintiffs who have been awarded only nominal damages.  The Court first concluded that a plaintiff who recovers nominal damages alone nonetheless satisfies the threshold requirement of being a "prevailing party" as required by § 1988.  Id. at 112.  The majority reasoned that a court awarding nominal damages to a plaintiff "neither enters judgment for defendant on the merits nor declares the defendant's legal immunity to suit" and that such an award alters the legal relationship between the parties, since "[a] plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages."  Id. at 112, 113.

The Court then stressed that while "the 'technical' nature of a nominal damages award . . . does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988."  Id. at 114.  Even in light of a plaintiff's status as a prevailing party, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee

-10-

request.  Id. (citing Tex. State Teachers Ass'n v. Garland
Indep. Sch. Dist., 489 U.S. 782, 793 (1989); Hensley v.
Eckerhart, 461 U.S. 424 (1983)).  Among other things, the Court
noted, "the awarding of nominal damages . . . highlights the
plaintiff's failure to prove actual, compensable injury."  Id.
at 115.  The Court concluded that "[w]hen a plaintiff recovers
only nominal damages because of his failure to prove an
essential element of his claim for monetary relief . . . the
only reasonable fee is usually no fee at all."  Id. (emphasis
added).

        Justice O'Connor joined the majority but authored a
separate concurrence in order "to explain more fully why . . .
it is appropriate to deny fees in this case."  Id. at 116
(O'Connor, J., concurring).  She reiterated that the "de minimis
or technical victory" that an award of nominal damages often
signifies "is part of the determination of what constitutes a
reasonable fee."  Id. at 117.  When "the de minimis nature of
the victory makes the proper fee immediately obvious," Justice
O'Connor wrote, "it is enough for a court to explain why the
victory is de minimis and announce a sensible decision to award
low fees or no fees at all.'"  Id. at 118 (citation omitted).
She cautioned, however, that not "all nominal damages awards are
de minimis.  Nominal relief does not necessarily a nominal
victory make."  Id. at 121.  Justice O'Connor thus suggested

that courts determine whether a nominal damages award is a "technical" victory by examining the "difference between the amount recovered and the damages sought," the "significance of the legal issue on which the plaintiff claims to have prevailed," and whether the plaintiff's success "accomplished some public goal." Id. at 121-22.

Our Court of Appeals had occasion to apply Farrar in Jama v. Esmor Correctional Services, 577 F.3d 169 (3d Cir. 2009). In that case, a jury had awarded a plaintiff only nominal damages on her § 1983 claim against an immigration detention center and one of its employees but had returned a $100,000 compensatory damages verdict on her pendant state-law claim against the same defendants. Id. at 173.

Noting that several other Courts of Appeals had relied on Justice O'Connor's Farrar concurrence in "permit[ing] fee awards despite the award of nominal damages" on civil rights claims, the Jama court concluded that a plaintiff's receipt of a nominal damages award on a civil rights claim did not automatically disqualify her from receiving attorney's fees. Id. at 176. In doing so, the Jama court noted that while the majority in Farrar had held that the appropriate fee for a plaintiff who receives only nominal damages is "usually" no fee at all, it had "provided no guidance for distinguishing the usual from the unusual case. Justice O'Connor set forth a

practical method for resolving such questions." Id. at 176 n.8.
Thus, "a district court determining the degree of a plaintiff's
success should consider not only the difference between the
relief sought and achieved, but also the significance of the
legal issue decided and whether the litigation served a public
purpose." Id. at 176. The Jama court ultimately remanded the
matter for a determination of the extent to which Jama's success
on her state-law claim should influence her recovery of
attorney's fees. Id. at 179-80.

        The Third Circuit thereafter tempered its opinion in
Jama, acknowledging that the ruling "may have muddied the waters
after Farrar." Velius v. Twp. of Hamilton, 466 F. App'x 133,
140 (3d Cir. 2012). In Velius v. Township of Hamilton, the
court reviewed a district court's decision to award $2,259 in
attorney fees – a small fraction of the $82,600 requested – to a
plaintiff who had recovered nominal damages on his § 1983
excessive force claim against two police officers. Id. at
134-35. The district court had relied on Jama, "seem[ing] to
believe it was obligated to apply the factors cited in Justice
O'Connor's concurrence in Farrar." Id. at 139. This, the Court
of Appeals held, was a misapplication of the appropriate
standard. Id. at 140.

        The Velius court clarified that its adoption "of
Justice O'Connor's factors must be understood only as an

-13-

endorsement of the use of those considerations by trial judges who believe the case before them may present the rare situation in which success on the claim justifies attorneys' fees despite the technical victory manifested by an award of nominal damages."  Id.  Farrar, the court acknowledged, had "grant[ed] district courts substantial discretion to decide whether no fee or some fee would be reasonable, as long as they acknowledge that a nominal damages award is presumptively a technical victory that does not merit an award of attorneys' fees."  Id. at 140-41.  Having determined that no fee or a low fee is appropriate, the court held, a trial court need not "apply multi-factor tests or calculate the lodestar.  Indeed, Farrar permits a district court to determine the amount of any low fee award it deems is warranted by whatever means it chooses in its broad discretion."  Id. at 141.

> The court concluded:
>
> Farrar does not establish any rule strictly
> governing when a nominal damages award
> signals *de minimis* success or dictating how
> fees must be calculated if a court
> determines that a low fee is appropriate.
> The only requirement that remains intact for
> awarding attorneys' fees in nominal damages
> cases is that if the court decides to award
> something other than no fee or a low fee, it
> must conduct a lodestar analysis.

Id.  Concerned that the district court had not comprehended the breadth of its discretion under Farrar, the Velius court

remanded the matter for a second review of the plaintiff's fee
request.  Id.

More recently, the Third Circuit upheld a district
court's determination that a plaintiff who had received nominal
damages[6] on his civil rights claim was entitled to no attorney's
fees.  Carroll v. Clifford Twp., 625 F. App'x 43, 46 (3d Cir.
2015).  It observed that the district court had had "applied the
correct standard."  Id.  The district judge had concluded that
the matter before it was "not the rare case in which attorney
fees are appropriate for a prevailing party who was awarded
nominal damages."  Carroll v. Clifford Twp., No. 12-0553, 2014
WL 2860994, at *3 (M.D. Pa. June 23, 2014).  In reaching this
conclusion, the district court first noted that "the damages
awarded [were] a minute fraction" of those sought and that it
"must give primacy to" this disparity.  Id.  The district court
then stated that it "need not consider the additional O'Connor
factors" but nevertheless did so briefly, observing that "the
legal issue in the case [was] not of particular significance"
and the claim was "not one with an important public purpose."
Id. at *3-*4.  Nothing, the district court concluded, indicated
"that the presumption of no attorney fee should be overcome in
this case."  Id. at *4.

---

6.  The jury also awarded the plaintiff $30,000 in punitive
damages, but the district court set aside this award in a
post-trial ruling.  Carroll, 625 F. App'x at 45.

SDP does not dispute that plaintiffs Yarnall, Boyd, and Ciccimaro are the "prevailing parties" on the Title VII claim.[7]   Consequently, we need only decide whether their request for fees is reasonable.  See Farrar, 506 U.S. at 114.   The facts before us, like those in Carroll, do not present "the rare case in which attorney fees are appropriate for a prevailing party who was awarded nominal damages."  See Carroll, No. 12-0553, 2014 WL 2860994, at *3; see also Velius, 466 F. App'x at 140. The nominal damages awards received by Yarnall, Boyd, and Ciccimaro are "presumptively a technical victory that does not merit an award of attorneys' fees," although we have "substantial discretion" to decide whether a fee is nonetheless reasonable.  See Velius, 466 F. App'x at 140-41.  We conclude that it is not.  This case is not like Jama, where the plaintiff received a substantial recovery on her pendant state-law claim in addition to the nominal damages she was awarded on her § 1983 claim.  See Jama, 577 F.3d at 173.  To the contrary, the matter before us more closely resembles Carroll, where the plaintiff was awarded only $1 in nominal damages upon failing to prove "actual, compensable injury."  See Carroll, 625 F. App'x at 46 (quoting Farrar, 506 U.S. at 115).  Yarnall, Boyd, and Ciccimaro

---

7.  As noted above, Marenbach did not prevail against SDP on her Title VII claim because the jury determined that she had not exhausted her administrative remedies.  Consequently, Marenbach is precluded from seeking attorney's fees from SDP in connection with the Title VII claim.  See 42 U.S.C. § 2000e-5(k).

failed to "prove actual, compensable injury" in connection with their Title VII claim against SDP, and consequently, their victory on that claim was merely "technical."   See Farrar, 506 U.S. at 114, 115.

We read Jama and Velius as granting us discretion to forego consideration of the factors proposed by Justice O'Connor unless we determine that the matter before us is the "rare situation" that requires it.   See Velius, 466 F. App'x at 140. Even if we do consider those factors, however, they lead us to the conclusion that the appropriate fee in this case is no fee. First, the "difference between the amount recovered and the damages sought" is vast.   See Farrar, 506 U.S. at 121 (O'Connor, J., concurring).   The most recent version of plaintiffs' complaint demanded damages in excess of $150,000, and during settlement conferences they demanded as much as $200,000 from SDP.   The jury awarded them nominal damages totalling $3, a mere .0015 percent of the larger demand.   In Carroll, the disparity between the $1 received by the plaintiff and the $10,000 he had sought justified the district court's decision not to award fees.   See 625 F. App'x at 46.   The same holds true here.[8]

_____

8.   We note further than in addition to these sizable demands, plaintiffs also sought an injunction.   Indeed, plaintiffs point to their request for an injunction in an attempt to bolster their claim that the nominal damages award is not "de minimis" because this case is about more than pecuniary recovery.   In reality, however, the fact that we rejected their request for

-17-

Second, the "significance of the legal issue on which [plaintiffs] claim[] to have prevailed" does not justify an award of attorney's fees.  See Farrar, 506 U.S. at 121 (O'Connor, J., concurring).  Plaintiffs contend that in securing nominal damages against SDP, they "preserved and vindicated their federally protected right to be free from unlawful discrimination in their work environment."  They fail to recognize, however, that "every civil rights case in which the plaintiff prevails on the merits vindicates some right.  It cannot be the case that the mere vindication of rights alone suffices to distinguish those cases in which the presumption of no fee is overcome."  See Velius, 466 F. App'x at 141 n.4.  The claim was not novel, and we cannot see how plaintiffs' circumstances stand out in any "significant" way from any other Title VII hostile work environment action.  Moreover, the Title VII claim, which was one of five claims in plaintiffs' Third Consolidated Amended Complaint, is not a "significan[t] . . . legal issue" in the context of this case.

Finally, the verdict on the Title VII claim did not "accomplish[] some public goal" sufficient to justify an award of fees.  See Farrar, 506 U.S. at 121-22 (O'Connor, J., concurring).  As SDP observes, the verdict against it was "too

_____

injunctive relief strengthens SDP's contention that the difference between the relief sought and the relief obtained is vast enough to justify a denial of fees.

vague to effectively put other individuals on notice regarding
the type of conduct that violates Title VII." The jury answered
in the affirmative to the interrogatory "[d]o you unanimously
find by a preponderance of the evidence that during the
2008-2009 school year, the School District of Philadelphia
intentionally discriminated against [each plaintiff] on the
basis of her race by subjecting her to a hostile work
environment?" This verdict, like the "regrettably obtuse" one
in Farrar, "cannot deter misconduct any more than a bolt of
lightning can; its results might be devastating, but it teaches
no valuable lesson because it carries no discernable meaning."
506 U.S. at 122 (O'Connor, J., concurring).

It is true that in addition to the nominal damages
recovered by Yarnall, Boyd, and Ciccimaro from SDP, plaintiffs
were awarded additional damages from SDP's codefendant Ray. As
noted above, the jury awarded each plaintiff: $1 in nominal
damages and $2,000 in punitive damages on the § 1983 equal
protection claim against Ray (which, like the Title VII claim,
alleged a hostile work environment); $1,000 in compensatory
damages and $2,000 in punitive damages on the § 1983 invasion of
privacy claim; and $1 in nominal damages and $3,500 in punitive
damages on the § 1983 retaliation claim. In addition to the $1
that Yarnall, Boyd, and Ciccimaro received from SDP, each
plaintiff was awarded a total of $8,502 in damages against Ray.

-19-

However, the § 1983 invasion of privacy claim, which was the only claim on which plaintiffs received compensatory damages from Ray, shares no "common core of facts" with the Title VII claim against SDP, and the two are based on different legal theories.  Cf. Jama, 577 F.3d at 179 (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).  Indeed, the court ruled prior to trial that the surveillance activity which served as the basis for the § 1983 invasion of privacy claim could not be considered by the jury in its deliberations on the Title VII claim or the § 1983 equal protection claim.  Put differently, there was no link between the conduct of SDP and Ray's surveillance activity, which, according to the jury's verdict, was the only activity at issue in this case that gave rise to any "actual, compensable injury."  See Farrar, 506 U.S. at 115. While the § 1983 equal protection claim bore a closer relationship to the claim against SDP, the jury found no compensable harm in connection with that claim.  See id.  It awarded only nominal and punitive damages against Ray.

Plaintiffs contend that they are entitled to fees from SDP because SDP "is accountable and tacitly defended Charles Ray," but they provide no explanation as to why this should be the case.  Furthermore, as SDP correctly points out, the fact "[t]hat a plaintiff has prevailed against one party does not entitle him to fees from another party."  Kentucky v. Graham,

473 U.S. 159, 168 (1985) (citing <u>Hensley</u>, 461 U.S. 424).  In
light of these considerations, plaintiffs' recovery against Ray
does not change our conclusion that they are entitled to no
attorney's fees from SDP.[9]

Consequently, plaintiffs' request for attorney's fees
from SDP will be denied.

IV.

Plaintiffs, as noted above, are the prevailing parties.
Thus, they are at least entitled to costs as provided in 28 U.S.C.
§ 1920.  <u>See</u> Fed. R. Civ. P. 54(d)(1); <u>Carroll</u>, 625 F. App'x at 47;
<u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.</u>, 674 F.3d 158,
163 (3d Cir. 2012).

Plaintiffs have styled their filing a "Petition for
Attorney Fees and Costs" and have submitted a form of order
indicating that they seek, among other things, "[t]he sum of
$27,317.24 toward costs of litigation."  Nowhere in their
supporting memorandum or their reply memorandum do they provide any
argument or citation of authority in support of this demand.

Plaintiffs' exhibits in support of their petition shed
some light on the "costs" they hope to recover.  In an affidavit,
attorney Hendrick explains that the $27,317.24 in costs sought by
plaintiffs consists of "$12,445 in expert fees paid to Dr. Gerald

---

9.  Plaintiffs, recognizing that Ray "is likely judgment proof,"
suggest that SDP and Ray "could be jointly and severally
liable."  They cite no authority in support of this contention.

Cooke[] and $14,871.74 in costs (depositions, transcripts,

subpoenas, copies, parking)."  An accompanying "Statement of Costs"

further breaks down this sum as including:  $10,410 for costs

associated with depositions; $599.80 for parking; $1,400 for

"Federal Complaint ($350.00 each x 4)"; $140 for "Service of

Process (complaints)"; $33 for "Service of Process (U.S. Mail)";

$777.40 in "Subpoena and witness fees"; $870 for "Private

Investigator Bradley"; $574.99 in copying expenses; $65.75 for

"USPS"; and $12,445.50 for the expert fee of Dr. Cooke.

    As SDP points out, "[p]laintiffs do not . . . specify

the statutory basis for the costs they seek – in particular,

whether they are asserting these costs are properly included as

part of the attorneys' fee provided for in 42 U.S.C. § 2000e-5(k)

of Title VII [sic], or whether they are asserting these are taxable

costs pursuant to 28 U.S.C. § 1920."

    Section 1920 provides in relevant part:

    A judge or clerk of any court of the United
    States may tax as costs the following:

    (1)  Fees of the clerk and marshal;

    (2)  Fees for printed or electronically
    recorded transcripts necessarily obtained for
    use in the case;

    (3)  Fees and disbursements for printing and
    witnesses;

    (4)  Fees for exemplification and the costs of
    making copies of any materials where the

copies are necessarily obtained for use in the
case;

(5)  Docket fees . . . ; [and]

(6)  Compensation of court appointed experts,
compensation of interpreters, and salaries,
fees, expenses, and costs of special
interpretation services . . . .

A bill of costs shall be filed in the case
and, upon allowance, included in the judgment
or decree.

Under Rule 54(d)(1) of the Federal Rules of Civil

Procedure, a "prevailing party" is entitled to recover the costs

set forth in § 1920 "[u]nless a federal statute, these rules, or a

court order provides otherwise."  Fed. R. Civ. P. 54(d)(1); see

also Carroll, 625 F. App'x at 47.  The Rule further provides that

"[t]he clerk may tax costs on 14 days' notice.  On motion served

within the next 7 days, the court may review the clerk's action."

As noted above, we may in our discretion award a

prevailing party in a Title VII action "a reasonable attorney's fee

(including expert fees) as part of the costs."  42 U.S.C.

§ 20000e-5(k) (emphasis added).  "The phrase 'as part of the costs'

means that the attorney's fee may be imposed 'as an additional

component of the traditional costs taxed by the court pursuant to

28 U.S.C. § 1920.'"  EEOC v. U.S. Steel Corp., 877 F. Supp. 2d 278,

286 (W.D. Pa. 2012) (quoting Oates v. Oates, 866 F.2d 203, 207 (6th

Cir. 1989)).

As its phrasing suggests, § 2000e-5(k) contemplates the inclusion of "expert fees" in a district court's determination of what constitutes "a reasonable attorney's fee." See, e.g., Krouse v. Am. Sterilizer Co., 928 F. Supp. 543, 547 (W.D. Pa. 1996).  In addition, our Court of Appeals has held that the "reasonable attorney's fee" that a court may, in its discretion, award to a prevailing party under § 1988 "includes . . . those litigation expenses that are incurred in order for the attorney to be able to render his or her legal services." Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995). This encompasses "reproduction expenses," "telephone expenses of the attorney," "travel time and expenses of the attorney," and "postage," so long as "it is the custom of attorneys in the local community to bill their clients separately for" these items.  Id.

We have already determined that plaintiffs are not entitled to recover any attorney's fee under § 2000e-5(k).  It follows that they are not entitled to recover any costs encompassed by such an attorney's fee, including any expert fees.  Without an explanation from plaintiffs, we are unable to determine which of their enumerated litigation costs are requested pursuant to § 2000e-5(k).  To the extent that plaintiffs do request litigation costs under that provision, their request is denied.

-24-

In the alternative, plaintiffs may be seeking the costs that are typically recoverable under § 1920. A bill of costs under § 1920 should be determined in the first instance by the Clerk of Court. Fed. R. Civ. P. 54(d)(1); E.D. Pa. Civ. R. 54.1; see also, e.g., McKenna v. City of Phila., 582 F.3d 447, 454 (3d Cir. 2009). We note that several of the items for which plaintiffs seek reimbursement, including but not necessarily limited to parking expenses and the fee for "Private Investigator Bradley," do not appear on the list of reimbursable expenses set forth in § 1920. In any event, plaintiffs concede that they have not yet filed a bill of costs, which they need to do in order to recover under § 1920. See 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); E.D. Pa. Civ. R. 54.1.

V.

Finally, we note that the proposed order submitted by plaintiffs would have us direct SDP to pay "Pre and Post judgment interest pursuant to 28 U.S.C. [§] 1961(a) and (b)."[10] Once again,

---

10. 28 U.S.C. § 1961 provides in pertinent part:

> (a)  Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year

plaintiffs have not articulated or explained this demand anywhere in the body of their petition or in the supporting memoranda.

The civil judgment in this matter, which awarded plaintiffs a total of $3 against SDP and $34,008 against Ray, was entered more than a year ago.  See Doc. # 261 (June 17, 2015).  To the extent that plaintiffs seek to amend that judgment to include prejudgment interest, their deadline for doing so has long since passed.  See Fed. R. Civ. P. 59(e).[11]  As for plaintiffs' request for postjudgment interest, we remind them once again that "'post-judgment interest is a creature of statute, not of contract or judicial determination,' and is 'earned whether or not recited in the judgment.'"  See Opinion dated April 18, 2016 (Doc. # 280) at 15 (quoting Litton Sys., Inc. v. Am. Tel. & Tel. Co., 568 F. Supp. 507, 511 n.2 (S.D.N.Y. 1983)).

---

constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b)  Interest shall be computed daily to the date of payment . . . and shall be compounded annually.

11.  Pursuant to Rule 59(e), any "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."